## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

JAMAR LELAND,

     **Plaintiff,**

vs.                                                      Case No. 4:06cv568-SPM/WCS

DANIEL EDGE,

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION

     Plaintiff, a *pro se* inmate, filed an amended civil rights complaint.  Doc. 23.

Defendant filed a special report, doc. 34, construed as a motion for summary judgment,

doc. 35.  Plaintiff was advised as to his obligation under Rule 56 in responding to the

motion.  Doc. 35.  Plaintiff filed his opposition to Defendant's summary judgment motion.

Doc. 48.  The motion is ready for a ruling.

**Plaintiff's allegations, doc. 23**

     Plaintiff was being held in the Leon County Jail when this case was initiated.

Doc. 23, p. 2.[1]  The only Defendant is Correctional Officer Daniel Edge, who worked at

the Jail.  *Id.*  Plaintiff alleges that on March 4, 2006, while he was housed in

_____

     [1] The page numbers cited are those assigned sequentially to the pages of the
document on the electronic docket.

confinement in Pod G-2, Officer Edge told him that Officer Jones was his friend, and if Plaintiff had anything to do with an altercation with Officer Jones and Sergeant Parramore (which was the reason that Plaintiff was in confinement), he (Plaintiff) would not eat the next day if Edge had anything to do with it.  *Id.*, p. 7.

Plaintiff alleges that the next day, March 5, 2006, Edge passed his cell and refused to give him a food tray.  *Id.*  He said that when Sergeant Hutcheson came around with the nurse at 8:30 p.m., he told Hutcheson that he had not been fed; at 9:20 p.m., Hutcheson provided two peanut butter sandwiches.  *Id.*  When Plaintiff saw that the meal involved peanuts, he "yelled downstairs that I was allergic to peanut butter." *Id.*  Plaintiff alleges that Defendant Edge "kept calling my room intercom telling me what he had done to my dinner tray [and] he came up to my room to attempt to feed me when he [dropped] the tray on the ground from the food flap down."  *Id.*, pp. 7-8.

Plaintiff then alleges that at 9:45 p.m., Officer Smith "brought me a dinner plate." *Id.*, p. 8.  Plaintiff alleges that Edge called his room again and said he would "tell you what I did to it after you eat it."  *Id.*  Plaintiff ate a little, and then Edge called him again on the intercom and asked him how his "dick" tasted.  *Id.*  Edge then allegedly told Plaintiff that for "putting the Sergeant on me I'm going to take all your recreation time from you."  *Id.*  Plaintiff said that on March 11, 2006, Edge refused to give him recreation time.  Plaintiff alleges that on another day in March, 2006, Edge did not feed him breakfast.  *Id.*

Plaintiff alleges that the refusal to feed him twice was a retaliatory act in violation of the Fourteenth Amendment and a violation of the Eighth Amendment.  *Id.*, p. 9.  He seeks money damages.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). The burden then shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. *Id.* An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).

Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule

56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

Daniel Edge avers in his affidavit that on March 5, 2006, at about 1720 hours, he was attempting to feed the inmates on Pod G-2.  Doc. 34-2, p. 1.  He had been told that Plaintiff Leland "was known to throw urine or food at correctional officers," so when he approached Leland's cell, he "requested that he show me his hands."  *Id*.  Edge states:

> Inmate Leland refused to do so and cursed at me.  Due to his lack of cooperation, I did not give him his food tray at that time.  I continued with my duties of feeding other inmates.

*Id*.  Edge states that he returned three times to Leland and tried to get him to accept his food tray, but Leland refused to comply with his command to show him his hands and continued to curse Edge.  *Id*., p. 2.  Edge returned Plaintiff's food tray to the officer's station due to his "complete lack of cooperation."  *Id*.  Edge states that at the request of Sergeant Hutcheson, Edge asked Leland if he would accept a bag lunch and Leland said yes, but then Edge learned that Plaintiff could not eat peanut butter.  *Id*.  Officer Edge then states:

> A decision was made to obtain a meal from the officer's line to replace his evening meal that he refused to accept.  At Sgt. Hutcheson's request, I asked Leland if he could eat spaghetti and meatballs.  He said he would accept spaghetti and meatballs.

*Id*.  Edge avers that he had no involvement in giving Plaintiff the bag lunch or the spaghetti and meatballs.  *Id*.  Edge states that the next morning, Plaintiff refused to

accept his breakfast tray, but did accept his milk; it was common, states Edge, for Plaintiff to refuse breakfast.  *Id.*

Edge states that he has no personal recollection of denying recreation time to Plaintiff.  *Id.*  However, he states that denial of recreation time was warranted due to Plaintiff's refusal to comply with his commands to show his hands on March 5, 2006.  *Id.* Edge prepared a memorandum dated March 8, 2006, describing the incident concerning Plaintiff's refusal to obey his order.  *Id.* and p. 4.  The memorandum describes the incident in essentially the same terms as Edge's affidavit.

Sergeant James Bradley Hutcheson states in his affidavit that at about 1945 hours on March 8, 2006,[2] Plaintiff complained that he had not been fed that evening. Doc. 34-3, p. 1.  Hutcheson asked Officer Edge about this, and Edge told him that he was unable to provide a food tray to Plaintiff because Plaintiff repeatedly refused to show his hands and accept the food tray.  *Id.*, pp. 1-2.  Hutcheson asked Edge to ask Plaintiff if he would accept a bag lunch, and Edge said Plaintiff would.  *Id.*, p. 2. Sergeant Hutcheson obtained a bag lunch from the kitchen and gave it to Plaintiff at 2020 hours, but when Plaintiff opened it, he yelled he could not eat peanut butter.  *Id.* Sergeant Hutcheson told Plaintiff he had no more options because the kitchen was closed.  *Id.*  Hutcheson told Lieutenant McRae of the situation, and McRae suggested that Hutcheson obtain food from the officer's line.  *Id.*  Edge contacted Plaintiff and Plaintiff said he could eat spaghetti and meatballs.  *Id.*  Sergeant Hutcheson states:

---

[2] The date of March 8, 2006, seems to be an obvious mistake.  The date of March 5, 2006, is established by the memorandum dated March 8, 2006.  Doc. 34-2, p. 4.  The error appears to have originated in the memorandum dated March 6, 2006, which contains the erroneous date of March 8, 2006, as the date of the incident, an obvious impossibility for a memorandum prepared two days earlier.  Doc. 34-3, p. 4.

> I personally microwaved a plate of spaghetti and meatballs for inmate Leland and took it to Pod G.  Inasmuch as it appeared that inmate Leland was upset with Officer Edge, I asked Officer Korey Smith to deliver the tray.  I relieved Officer Smith while he did so.

*Id*.  All of these facts are described in a memorandum dated March 6, 2006, from Sergeant Hutcheson to Lieutenant McRae.  *Id*., p. 4.

Plaintiff grieved the alleged denial of a meal by Officer Edge by a grievance dated March 7, 2006.  Doc. 34-4, p. 3.  In that grievance, Plaintiff did not assert that Officer Edge told him that the meal was withheld in retaliation for the altercation with Officer Jones, or that he had contaminated the meal in any way.  *Id*.   Plaintiff admits in the grievance that Officer Edge told Sergeant Hutcheson that he (Plaintiff) would not back up from the door.  *Id*.

Plaintiff has filed a response under penalty of perjury.  Doc. 48.  The response repeats almost verbatim the allegations of the complaint.  *Id*.  As a consequence, Plaintiff declares under penalty of perjury that Defendant Edge told him he would withhold his meal because Plaintiff had had an altercation with other officers who were Edge's friends.  Plaintiff avers that Edge did so for that reason, not because Plaintiff refused to show his hands and refused the meal tray.  Plaintiff avers that Edge told him that he had contaminated the second food tray, containing spaghetti and meatballs, again to punish Plaintiff.  Plaintiff has averred that Edge denied a breakfast meal and recreation time for the same reasons.

Plaintiff's declarations under penalty of perjury create genuine issues of material facts.  The court must accept Plaintiff's version of events as true on Defendant's motion for summary judgment.

**Analysis**

Plaintiff's retaliation claim is misguided.  "It is well established that a prisoner's constitutional rights are violated if adverse action is taken against him in retaliation for the exercise of his First Amendment rights."  Pate v. Peel, 256 F.Supp.2d 1326, 1336 (N.D. Fla. 2003), citing Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003); Douglas v. Yates, 535 F.3d 1316 (11th Cir. 2008).  Plaintiff has not alleged that he was punished for exercising a First Amendment right.  He has alleged that he was punished for having an altercation with other officers.

Plaintiff was a pretrial detainee at the time of the incident.  Therefore, his claim concerning punishment, that is, denial of food and recreation, is analyzed as a due process claim.  Lumley v. City of Dade City, Fla., 327 F.3d 1186, 1196 (11th Cir. 2003).

> The Supreme Court has identified two situations in which a prisoner can be further deprived of his liberty such that due process is required. The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  See Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); Vitek v. Jones, 445 U.S. 480, 492-93, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second situation is when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484, 115 S.Ct. at 2300; Wolff v. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process).  In the first situation, the liberty interest exists apart from the state; in the second, the liberty interest is created by the state. Bass, 170 F.3d at 1318[3].

Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999).

---

[3] Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999).

The facts in this case implicate the first type of due process interest.  Denial of

food "is a form of corporal punishment" and thus implicates the Eighth Amendment.

Cooper v. Sheriff, Lubbock County, Tex., 929 F.2d 1078 (5th Cir. 1991).[4]  The Eighth

Amendment standard is the same as the due process standard for pretrial detainees.

Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996); Bozeman v. Orum, 422 F.3d

1265, 1271 (11th Cir. 2005).  In dicta, the Eleventh Circuit has said that denial of food is

punishment that may be imposed only if procedural due process is afforded.  Solomon

v. Zant, 888 F.2d 1579, 1582 (11th Cir.1989) (*dicta*) ("Marable could not have imposed

physical punishment, denied Solomon food, or imposed other disciplinary measures

without due process.").

While denial of food, or providing deliberately contaminated food that a

reasonable person would not or could not eat, is not the same as subjecting a prisoner

to excessive force, the cases concerning excessive force are helpful to the court in

determining whether Plaintiff has come forward with evidence of sufficient evidence of

intent to cause him more than *de minimis* harm without due process.  An Eighth

Amendment claim that excessive and unnecessary force was used by correctional

officers requires a showing of "unnecessary and wanton infliction of pain."  Whitley v.

Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).  Relevant to

the inquiry will be "the need for the application of force, the relationship between the

---

[4] "[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment. . . ."  Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993), *quoting*, DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-1006, 103 L.Ed.2d 249 (1989).

need and the amount of force that was used, [and] the extent of injury inflicted."  *Id.* at

320; *see e.g.*, Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991).  "The absence

of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."

Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992).

"[T]he Eighth Amendment's prohibition of cruel and unusual punishment excludes from

constitutional recognition *de minimis* uses of physical force, *provided that the use of*

*force is not of a sort 'repugnant to the conscience of mankind*.' "  Siglar v. Hightower,

112 F.3d 191, 193-94 (5th Cir. 1997) (emphasis added), *quoting* Hudson, 503 U.S. at

10, 112 S. Ct. at 1000 (considering the "physical injury" requirement of the PLRA).

Further, "the injury must be more than *de minimus*, but need not be significant."  Siglar,

112 F.3d at 193.  "[T]he type of punishment, rather than some arbitrary quantity of

injury, may be relevant for Eighth Amendment Claims."  Harris v. Chapman, 97 F.3d

499, 505 (11th Cir. 1996), *cert. denied* 520 U.S. 1257 (1997).  *See also* United States v.

LaVallee, 439 F.3d 670, 687-688 (10th Cir. 2006) (rejecting the notion that "*de minimis*

injury can serve as conclusive evidence that *de minimis* force was used").

　　　With respect to the "injury" issue in excessive force cases, the Court in Hudson

said:

> In the excessive force context, *society's expectations are different* [from
> society's expectations as to the level of conditions-of-confinement and
> medical care for prisoners].  *When prison officials maliciously and
> sadistically use force to cause harm, contemporary standards of decency
> always are violated.  See Whitley*,[5] supra, 475 U.S., at 327, 106 S.Ct., at
> 1088. *This is true whether or not significant injury is evident.*  Otherwise,
> the Eighth Amendment would permit any physical punishment, no matter
> how diabolic or inhuman, inflicting less than some arbitrary quantity of
> injury.  Such a result would have been as unacceptable to the drafters of

_____

　　　[5] Whitley v. Albers, 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

the Eighth Amendment as it is today.  *See Estelle,*[6] supra, 429 U.S., at 102, 97 S.Ct., at 290 (proscribing torture and barbarous punishment was "the primary concern of the drafters" of the Eighth Amendment); *Wilkerson v. Utah*, 99 U.S. 130, 136, 25 L.Ed. 345 (1879) ("[I]t is safe to affirm that punishments of torture ... and all others in the same line of unnecessary cruelty, are forbidden by [the Eighth Amendment]").

That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.  *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").  The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort " 'repugnant to the conscience of mankind.' "  *Whitley*, 475 U.S., at 327, 106 S.Ct., at 1088 (quoting *Estelle*, supra, 429 U.S., at 106, 97 S.Ct., at 292) (internal quotation marks omitted).

503 U.S. at 9-10, 112 S.Ct. at 1000 (emphasis added).

There are genuine disputes of material fact as to whether Officer Edge deliberately withheld two of Plaintiff's meals and deliberately contaminated one meal with intent to punish him for having an altercation with other officers.  The combination of withholding two meals and telling Plaintiff that another meal has intentionally been contaminated has the potential to cause much greater harm than denial of a single meal might cause.  A prisoner subjected to these actions might reasonably fear that all of his food in the foreseeable future will be contaminated.  Service of intentionally contaminated food is much the same as complete denial of food.  Plaintiff has come forward with enough evidence which, if true, would result in a verdict in his favor.[7]

---

[6] Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

[7] Of course, if Defendant's evidence is true, then Plaintiff has maliciously brought this suit.  If Defendant's evidence is true, the officers did everything they could to provide Plaintiff with food.  The court cannot resolve disputes of fact, however, on summary judgment.

Defendant argues that the denial of recreation time claim has not been supported because pursuant to Jail policy, recreation time can be denied without due process for a refusal to obey an order.  Defendant does not cite any cases for this proposition. Perhaps it is true that Fourteenth Amendment due process is not required to deny recreational time as summary punishment for refusal to obey an order, but that case has not been made.  Jail policy might be the starting point for such analysis, but it is not the end.  Moreover, a fact material to the defense, that Plaintiff disobeyed orders, is in dispute.  Summary judgment should denied as to this aspect of Plaintiff's claims.

Defendant contends that he has qualified immunity from an award of damages in his individual capacity.  "Qualified immunity shields public officials from suits against them in their individual capacities for torts committed while performing discretionary duties unless the tortious act violates a clearly established statutory or constitutional right."  Zivojinovich v. Barner, 525 F.3d 1059, 1071 (11th Cir. 2008), citing, Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  The issue for whether the right was clearly established does not necessarily depend upon whether there were materially similar cases.  It only requires that the unlawfulness of an act or omission be apparent in light of pre-existing law.  Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2516, 153 L.Ed.2d 666 (2002). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

Defendant has not come forward with any case law to show that a reasonable officer in Defendant's position would not have known that the right at issue here was not

clearly established.  The cases cited above clearly establish that a pretrial detainee cannot be deprived of food and provided food that has been contaminated as punishment, at least without due process.  If it was not already apparent, Helling v. McKinney made it plain that food is one of life's essentials that must be provided to a prisoner.  Cooper v. Sheriff, Lubbock County determined that denial of food is a form of corporal punishment.  And our own circuit in Solomon v. Zant, in dicta, said that a prisoner cannot be denied food without due process.  For these reasons, considering Plaintiff's evidence in a light most favorable to him as the non-movant, Defendant has not established the defense of qualified immunity.

Defendant is correct that Plaintiff is not entitled to any damages, punitive or compensatory, except nominal damages of one dollar.  He has alleged no physical injury.  The only injury he has is emotional injury and emotional injury cannot be recovered if there are no physical injuries.  42 U.S.C. § 1997e(e); Douglas v. Yates, *citing*, Harris v. Garner, 216 F.3d 970, 985 (11th Cir. 2000) (*en banc*).  Plaintiff may, if he wishes, dismiss this suit without prejudice, but he cannot recover emotional damages while a prisoner without proof of physical injury.

**Conclusion**

Consequently, it is **RECOMMENDED** that Defendant's motion for summary judgment, doc. 34, be **GRANTED** in part, and that Plaintiff's claims for damages except for nominal damages of one dollar be **DISMISSED without prejudice**, but that otherwise Defendant's motion for summary judgment be **DENIED**..

IN CHAMBERS at Tallahassee, Florida, on September 22, 2008.


<u>s/    William C. Sherrill, Jr.            </u>
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**